UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

10 ELLICOTT SQUARE COURT CORPORATION,                    **REPORT**
  doing business as Ellicott Development Company, and        **and**
5182 GROUP, LLC,                                         **RECOMMENDATION**

                        Plaintiffs,          **07-CV-00053A(F)**

      v.

MOUNTAIN VALLEY INDEMNITY COMPANY,

                        Defendant.
_____

APPEARANCES:      KENNEY, SHELTON, LIPTAK & NOWAK, LLP
                       Attorneys for Plaintiffs
                       JUDITH TREGER SHELTON, and
                       TIMOTHY E. DELAHUNT, of Counsel
                       Suite 510, Rand Building
                       14 Lafayette Square
                       Buffalo, New York 14203

                       HURWITZ & FINE, P.C.
                       Attorneys for Defendant
                       KATHERINE A. FIJAL, of Counsel
                       1300 Liberty Building
                       Buffalo, New York 14202-3670

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on

July 10, 2007.  The matter is presently before the court on motions for summary

judgment filed on June 13, 2008 by Defendant (Doc. No. 14), and by Plaintiffs (Doc. No.

19).


## BACKGROUND

Plaintiffs 10 Ellicott Square Court Corporation, doing business as Ellicott

Development Company ("EDC"), and 5182 Group, LLC ("5182 Group") (together, "Plaintiffs"), commenced this declaratory judgment action on January 30, 2007, alleging in connection with a personal injury action, *DelPrince v. 5182 Group, LLC*, Index No. I 2004-11061, then pending in New York Supreme Court, Erie County ("the state court action"), entitlement to a defense and indemnification under a commercial general liability insurance policy issued by Defendant Mountain Valley Indemnity Company ("Defendant" or "MVIC"), to Ellicott Maintenance, Inc. ("Ellicott Maintenance"). On February 7, 2008, Plaintiffs filed an amended complaint (Doc. No. 12) ("Amended Complaint"), reasserting the same factual allegations and claims as in the original complaint and, for the first time, alleging in connection with the state court action entitlement to a defense and indemnification under a commercial umbrella insurance policy also issued by Defendant to Ellicott Maintenance. On February 19, 2008, Defendant filed its answer (Doc. No. 13) to the amended complaint.

On June 13, 2008, Defendant filed a motion seeking summary judgment (Doc. No. 14) ("Defendant's motion"), supported by the attached Declaration of Katherine A. Fijal, Esq. (Doc. No. 14-2) ("Fijal Declaration"), exhibits A through P ("Defendant's Exh(s). ___"), the Affidavit of MVIC Senior Claims Examiner Susan Gabriele (Doc. No. 15) ("Gabriele Affidavit"), a Memorandum of Law (Doc. No. 16) ("Defendant's Memorandum"), and a Rule 56.1 Statement of Material Facts (Doc. No. 17) ("Defendant's Rule 56 Statement"). Also on June 13, 2008, Plaintiffs filed a motion for summary judgment (Doc. No. 19) ("Plaintiffs' motion"), supported by the Affidavit of Carl P. Paladino (Doc. No. 20) ("Paladino Affidavit"), with attached exhibits A through D ("Paladino Exh(s). ___"), the Affidavit of Theodore S. DiRenzo (Doc. No. 21), with

attached exhibits A through D ("DiRenzo Exh(s) ___"), Plaintiffs' Local Rule 56.1 Statement of Material Facts (Doc. No. 22) ("Plaintiffs' Rule 56 Statement"), Plaintiffs' Appendix to Local Rule 56.1 Statement of Material Facts containing exhibits 2 through 14 (Doc. No. 23) ("Plaintiffs' Exh(s). ___"), and a Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment (Doc. No. 24) ("Plaintiffs' Memorandum").

On July 11, 2008, Plaintiffs filed a Memorandum of Law in Opposition to Mountain Valley Indemnity Company's Motion for Summary Judgment and in Further Support of Plaintiffs' Motion for Summary Judgment (Doc. No. 26) ("Plaintiff's Response"). On July 14, 2008, Plaintiffs filed Plaintiffs' Counterstatement of Material Facts Pursuant to Local Rule 56.1 (Doc. No. 28) ("Plaintiffs' Rule 56 Response").[1]

On July 30, 2008, Defendant filed a Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment (Doc. No. 29) ("Defendant's Response"), Defendant's Counterstatement of Material Facts Pursuant to Local Rule 56.1 (Doc. No. 30) (Defendant's Rule 56 Response"), and the Declaration of Katherine A. Fijal, Esq. in Opposition to Plaintiffs' Motion for Summary Judgment (Doc. No. 31) ("Fijal Declaration"). In further support of summary judgment, Defendant filed on August 14, 2008, a Reply Memorandum of Law (Doc. No. 32) ("Defendant's Reply").

Oral argument was deemed unnecessary.

Based on the following, Defendant's motion should be DENIED; Plaintiff's motion should be GRANTED.

---

[1] On July 11, 2008, Plaintiffs erroneously filed a Certificate of Service instead of Plaintiffs' Rule 56 Response.

Carl P. Paladino, a local developer, is an officer of both 5182 Group and EDC, the Plaintiffs in this action. Ellicott Maintenance, Inc. ("Ellicott Maintenance"), is owned by one Theodore S. DiRienzo ("DiRienzo"), and is not affiliated with either 5182 Group or EDC. At all times relevant to this action, 5182 Group owned the Graystone Building ("the building"), located at 24 South Johnson Park, in Buffalo, New York. In 2003, 5182, as the building's owner, and EDC, as construction manager, commenced a construction project to renovate and convert the building into an apartment building ("the construction project"), for which Ellicott Maintenance was selected as the general contractor.

A written contract ("the construction contract") between Plaintiffs and Ellicott Maintenance, dated August 14, 2003, provides that Plaintiffs were to commence work as subcontractor for the construction project on August 18, 2003, with all work to be completed not later than November 17, 2003. The construction contract also provides that Ellicott Maintenance was to obligated to defend and indemnify Plaintiffs with regard to any bodily injury claims arising out work Ellicott Maintenance's work performed in connection with the construction project by having both 5182 Group and EDC named as additional insureds under Ellicott Maintenance's primary and excess liability insurance policies with limits of $ 5 million, and to provide Plaintiffs with a certificate of insurance ("the insurance certificate") listing 5182 Group and EDC as such additional insureds. On August 19, 2003, Ellicott Maintenance provided Plaintiffs with the required insurance certificate, obtained through insurance agency, LRMP Inc. ("LRMP"), and listing

---

[2] Taken from the pleadings and motion papers filed in this action.

Plaintiffs as additional insureds with regard to the construction project. According to the insurance certificate, Ellicott Maintenance purchased from MVIC, through MVIC's agent, LRMP, both a commercial general liability insurance policy, Policy No. 331-0013567-02 ("the primary insurance policy"),[3] as well as an excess/umbrella insurance policy, Policy No. X31-0013568-02 ("the excess insurance policy").[4] For both policies, the effective date is March 15, 2003, and the expiration date is March 15, 2004.

The primary insurance policy provides, *inter alia*, $ 1 million coverage for bodily injury per occurrence, with aggregate limit of $ 2 million. Primary Insurance Policy, Limits of Liability. Section II of the primary insurance policy, describing who is an insured under the policy, is amended by § 11 of the General Liability Extension Endorsement as follows:

> SECTION II - WHO IS AN INSURED is amended to include as an insured any person or organization with whom you agreed, because of a written contract, written agreement or permit, to provide insurance such as is afforded under this Coverage Form, but only with respect to liability arising out of your operations, "your work" or facilities owned or used by you. This provision does not apply:
> (1)    unless the written contract or agreement has been executed, or the permit has been issued, prior to the "bodily injury", "property damage" or "personal and advertising injury" . . . .

Primary Insurance Policy, Endorsement § 11.

The excess insurance policy provides for $ 2 million coverage for any occurrence with $ 2 million annual aggregate limit, and identifies the primary insurance policy as the "underlying insurance." Excess Insurance Policy, Limits of Liability. According to the excess insurance policy, anyone considered an insured in the "underlying insurance" is

---

[3] A copy of the primary insurance policy is filed as Defendant's Exh. J, and as Plaintiffs' Exh. 11.

[4] A copy of the excess insurance policy is filed as Defendant's Exh. K, and as Plaintiffs' Exh. 12.

also an insured under the excess insurance policy which, as relevant, states

> Each person or organization who is an "insured" in the "underlying insurance" is an "insured" under this insurance subject to all the limitations of such "underlying insurance" other than the limits of the underlying insurer's liability.

Excess Insurance Policy, § 3.d.

On August 20, 2003, Plaintiffs commenced work on the construction project. On August 22, 2003, Ellicott Maintenance subcontracted certain demolition work on the project to S&A Debris Removal ("S&A"). On September 9, 2003, S&A employee David DelPrince ("DelPrince"), was involved in an accident ("the accident"), while working on the project. That same date, Ellicott Maintenance notified MVIC of the accident. On September 12, 2003, the construction contract was signed by Paladino on behalf of 5182 Group and EDC, and by DiRienzo on behalf of Ellicott Maintenance.

On October 22, 2003, Plaintiffs notified MVIC of a potential claim based on the accident, and of Ellicott Maintenance's obligation to provide insurance in connection with the same under the primary insurance policy. Additional demands for insurance coverage from MVIC were made on EDC's behalf by EDC's primary insurance carriers, including Selective Insurance Company of America ("Selective"), on November 26, 2003, Nautilus Insurance Company ("Nautilus"), on December 23, 2003, and again by Selective on January 20, 2004. By letter dated April 13, 2004, MVIC first responded to EDC's insurance coverage demands, denying Plaintiff's insurance coverage in connection with any claim filed by DelPrince arising from the accident because the construction contract was not signed, and therefore not executed, until after the accident. On October 28, 2004, DelPrince commenced the state court action, naming as defendants 5182 Group, EDC and Ellicott Maintenance, and asserting negligence

claims under New York law.

On January 30, 2007, Plaintiffs, commenced this action seeking a judgment declaring Defendant obligated under the primary insurance policy to defend and indemnify Plaintiffs in the state court action.  On February 7, 2008, Plaintiffs served Defendant with the Amended Complaint, thereby notifying Defendant that insurance coverage in connection with the state court action was also sought under the excess insurance policy.

To date, Defendant has refused to provide Plaintiffs with a defense or indemnification, under either the primary or excess insurance policy, in connection with the state court action.

## DISCUSSION

**1.     Summary Judgment**

Defendant and Plaintiff have filed motions seeking summary judgment in this action.  Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322.

Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

Vague assertions supported only by self-serving statements in the nonmoving party's affidavit are insufficient to defeat a properly supported summary judgment motion. *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (non-movant cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts"); *Reisner v. General Motors Corp.*, 671 F.2d 91, 93 (2d Cir. 1982) (disregarding non-movant's self-serving affirmations contradicting prior assertions in depositions, interrogatories and affidavits). "The non-moving party may not rely on conclusory assertions or unsubstantiated speculation [to defeat summary judgment]." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Rather, "the non-movant must produce specific facts indicating that a genuine factual issue exists." *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998) (underlining added). The ultimate inquiry on a summary judgment motion is whether any reasonable jury could find the plaintiff's evidence meets the requisite burden of proof. *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 122-23 (2d Cir. 2004).

Defendant argues in support of summary judgment that (1) 5182 Group and EDC are not additional insureds under either the primary insurance policy or the excess insurance policy, Defendant's Memorandum at 13-21; (2) Plaintiffs failed to give timely

notice of claim with regard to the excess insurance policy, *id.* at 21-22; and (3) alternatively, if Defendant is required to any excess insurance coverage to Plaintiffs, the amount of such coverage should be considered excess to the primary insurance coverage Plaintiffs have through insurance policies with Selective and Nautilus. *id.* at 22-24. Plaintiffs argue in support of summary judgment that (1) the construction contract, pursuant to which Ellicott Maintenance was to procure insurance coverage for Plaintiffs was, as a matter of law, executed prior to the accident, Plaintiffs' Memorandum at 9-16; (2) Defendant is bound by the insurance certificate, issued by LRMP, to provide insurance coverage to Plaintiffs in connection with the accident, *id.* at 16-17; and (3) Plaintiffs automatically qualify as "insureds" under the excess insurance policy, which does not require the construction contract between Ellicott Maintenance and Plaintiffs be either signed or executed prior to the accident, *id.* at 17-18.[5]

Defendant does not deny that if it is obligated to provide Plaintiffs with insurance coverage under the primary insurance policy, it is also obligated to provide Plaintiffs with insurance coverage under the excess insurance policy. Plaintiffs do not dispute that if they are entitled to insurance coverage under the excess insurance policy, the amount of such coverage should be considered excess to the primary insurance coverage Plaintiffs have through insurance policies with Selective and Nautilus. Nor do Plaintiffs claim that Defendant failed to provide timely notice of disclaimer. As such, resolution of the arguments asserted in support of both summary judgment motions is dependent on

---

[5] That New York substantive law applies to this action before the court pursuant to diversity jurisdiction, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938) (in diversity action, federal court applies substantive law of state in which court sits), is not disputed by the parties.

(1) whether the construction contract, although not signed prior to the accident, obligates Defendant to provide Plaintiffs with insurance coverage, (2) whether Plaintiffs can rely on the insurance certificate as entitling Plaintiffs to insurance coverage from Defendant, and (3) whether the timely notice of potential claim Plaintiffs provided Defendant with regard to the primary insurance policy also served as a notice of potential claim with regard to the excess insurance policy.

**2.      Execution of the Construction Contract**

Defendant argues that it is not obligated to provide Plaintiffs with any defense under either the primary or excess insurance policies because the construction contract was not signed or executed by Plaintiffs and Ellicott Maintenance until September 12, 2003, three days after the accident and, as such, do not qualify as additional insured under the relevant insurance policies.  Defendant's Memorandum at 13-15 (primary insurance policy), 20-21 (excess insurance policy).  Plaintiffs argue in support of summary judgment that the construction contract does not require that it be signed, and Plaintiffs' and Ellicott Maintenance's partial performance of the contract prior to the date of the accident constituted the execution of the contract.  Plaintiffs' Memorandum at 9-16.  The parties agree that if Defendant is obligated under the primary insurance policy to defend and indemnify Plaintiffs with regard to the state court action, then Defendant is likewise obligated under the excess insurance policy.

In support of its argument, Defendant relies on *Rodless Properties, L.P. v. Westchester Fire Insurance Co.*, 835 N.Y.S.2d 154, 155 (1st Dep't. 2007), where the court, relying on the definition of an "executed contract" found in Black's Law Dictionary,

8th ed. [2004], held that a contract, similar to the construction contract at issue here and which had neither been reduced to writing nor fully performed as of the date of the accident, was not an executed contract pursuant to which the plaintiff could claim coverage as an additional insured. Defendant's Memorandum at 14-15. Plaintiff argues in opposition to summary judgment that if Defendant had intended that the word "executed" meant "signed" by Plaintiffs and Ellicott Maintenance, Defendant should have used that word and, further, that partial performance of a written contract is sufficient to establish that the contract has been "executed." Plaintiffs' Memorandum at 11-14.

A plain reading of *Rodless Properties, L.P.*, on which Defendant relies, establishes that the contract at issue was an oral contract containing no proof of any intent to name the owner of the project as an additional insured. *Rodless Properties, L.P.*, 835 N.Y.S.2d at 155. In contrast, in the instant case, Plaintiffs submit sworn statements from both Paladino and DiRienzo as proof of the intention for Ellicott Maintenance to have Plaintiffs named as additional insureds with regard to the insurance policies, and that work on the construction project would not begin until such insurance was in place. Paladino Affidavit ¶¶ 813; DiRienzo Affidavit ¶¶ 5-8, 14-15. This evidence is consistent with the fact that the insurance certificate was issued by LRMP on August 19, 2003, prior to Plaintiffs' commencement of work on the construction project. In fact, that both insurance policies contain language providing for additional parties to be insured thereunder, Primary Insurance Policy, Endorsement § 11; Excess Insurance Policy, § 3.d, establishes that Defendant had contracted for and anticipated being expected to provide insurance to other entities, such as Ellicott

Maintenance, who were performing work for Plaintiffs pursuant to the construction contract.

Nor does the definition of the term "executed" on which Defendant relies support Defendant's argument.  In particular, according to the edition of Black's Law Dictionary on which Defendant relies, the term "executed", as used in connection with a document, refers to a document "that has been signed," or "that has been done, given, or performed."  Black's Law Dictionary, 8th ed. [2004].  However, following the definition is an admonition that "'the term 'executed' is a slippery word.  Its use is to be avoided except when accompanied by explanation . . . .  A contract is frequently said to be *executed* when the document has been signed, or has been sealed, and delivered.  Further, by executed contract is frequently meant one that has been fully performed by both parties.'" *Id.* (quoting William R. Anson, Principles of the Law of Contracts 26 n. * (Arthur L. Corbin ed., 3d Am. ed. 1919)).  In the instant case, it is undisputed that the term "executed" in the insurance policies at issue is not accompanied by any explanation.

Further, under New York law, the court reads an insurance policy in light of "common speech" and the reasonable expectations of a businessperson.  *Belt Painting Corp. v. TIG Ins. Co.*, 795 N.E.2d 15, 17 (N.Y. 2003).  An insurer's duty to defend is "exceedingly broad" and applies "whenever the allegations of the complaint suggest a reasonable possibility of coverage."  *BP Air Conditioning Corp. v. One Beacon Ins. Group*, 871 N.E.2d 1128, 1131 (N.Y. 2007).  "[T]o 'negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies to

the particular case.'" *Belt Painting Corp.*, 795 N.E.2d at 17 (quoting *Continental Cas. Co. v. Rapid-American Corp.*, 609 N.E.2d 506 (N.Y. 1993)). Here, if Defendant intended to exclude coverage for additional insureds absent a signed contract or one that had been fully performed, Defendant could have drafted the insurance policy endorsement to so provide.

Moreover, the language of the primary insurance policy, providing for coverage under the policy to any "person or organization with whom [Ellicott Maintenance] agreed, because of a written contract . . . to provide insurance such as is afforded under this Coverage Form," provided "the written contract or agreement has been executed . . . prior to the "bodily injury", Primary Insurance Policy, Endorsement § 11, is, however, ambiguous. Significantly, with regard to the terms of an insurance contract, "any ambiguity must be construed in favor of the insured and against the insurer." *White v. Continental Cas. Co.*, 878 N.E.2d 1019, 1021 (N.Y. 2007). Accordingly, the ambiguity surrounding the primary insurance policy's definition of who qualifies as an "insured" is construed against Defendant in favor of Plaintiffs.

As such, pursuant to the construction contract, Plaintiffs qualify as "insureds" under both the primary and excess insurance policies and, on this issue, summary judgment should be GRANTED in favor of Plaintiffs and DENIED as to Defendant.

### 3.     The Insurance Certificate

As an alternative argument in support of Plaintiffs' assertion that they are entitled to insurance coverage under both the primary and excess insurance policies, Plaintiffs assert they are entitled to rely on the insurance certificate issued on August 19, 2003,

by LRMP, the same insurance agency that issued both MVIC insurance policies. Plaintiffs' Memorandum at 16-17. According to Plaintiffs, under New York law, an insurer's agent's issuance of a certificate of insurance designating certain entities as additional insureds under a specific insurance policy will estop the insurer from denying such coverage event if the coverage does not exist under the policy. *Id*. at 16. In contrast, Defendant argues that a certificate of insurance is only evidence of the insurer's intent to provide coverage but it is neither a contract for insurance nor conclusive proof that an insurance contract exists. Defendant's Memorandum at 15-18. In further support of summary judgment on this issue, Plaintiffs assert that Defendant's argument ignores relevant caselaw, specifically, *Niagara Mohawk Power Corp. v. Skibeck Pipeline Co., Inc.*, 705 N.Y.S.2d 459 (4th Dep't. 2000), relying instead on other caselaw that predate the relevant New York caselaw. Plaintiffs' Response at 8-9.

The insurance certificate at issue identifies both 5182 Group and EDC as additional insureds, and states

> This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below.

Defendant's Exh. L; DiRienzo Exh. C.

The certificate further states that "[t]he insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies." *Id*. By such language, the terms of the primary and excess insurance policies are incorporated into the insurance certificate.

*Niagara Mohawk Power Corp.*, is factually similar to the instant case insofar as the litigation arose out of an accident in which employees of the defendant construction

company were injured while working on the construction project owned by the plaintiff. *Niagara Mohawk Power Corp.*, 705 N.Y.S. 2d at 460.  The plaintiff owner sought a declaratory judgment that it was entitled to insurance coverage as an additional insured on an insurance policy issued by the defendant insurance company, through its agent, to the defendant construction company, as evidenced by a certificate of insurance, also issued by the agent and naming the plaintiff as an additional insured.  *Id*.  On a second certificate of insurance issued by the same agent, however, the plaintiff owner's name had been erroneously omitted.  *Id*.  The court held that in light of the undisputed evidence that the omission of the plaintiff's name on the second certificate of insurance as an additional insured under the relevant insurance policy was unintentional, the defendant insurance company was bound by its agent's actions in issuing a certificate of insurance designating the plaintiff as an additional insured under the co-defendant's insurance policy with the defendant insurance company, stating

> given the uncontroverted proof that [the insurer's agent] acted within the scope of its actual or apparent authority in adding [the owner] as an additional insured, we conclude that [the contractor's insurer] was bound by [its agent's] actions in issuing the certificate of insurance designating [the owner] as an additional insured.

*Niagara Mohawk Power Corp.*, 705 N.Y.S.2d at 461 (citing cases).

Therefore, in this case, LRMP, acting as Defendant's agent, issued the certificate of insurance naming Plaintiffs as additional insureds, upon which Plaintiffs were entitled to rely, regardless of the absence of a signing of the construction contract at that time. As in *Niagara Mohawk Power Corp.*, Defendant is bound by its agent LRMP's action in issuing the certificate, thereby waiving any argument that the construction contract have been signed.  Significantly, Defendant does not dispute that LRMP, as Defendant's

agent, acted within the scope of its authority in issuing the certificate of insurance. *See Lenox Realty Inc. v. Excelsior Ins. Co.*, 679 N.Y.S.2d 749, 750-51 (3d Dep't. 1998), *leave denied*, 712 N.E.2d 1245 (N.Y. 1999) (holding insurer was estopped from denying coverage where plaintiff reasonably relied upon issuance of insurance certificate by insurance agency, duly authorized to bind insurance, including policy amendments, and had, at least, apparent authority to act on insurer's behalf in issuing the subject insurance certificate); *Bucon, Inc. v. Pennsylvania Manufacturing Association Ins. Co.*, 547 N.Y.S.2d 925, 927 (3d Dep't. 1989) (by issuing certificate of insurance, naming the plaintiff as an additional insured, insurer was estopped from denying coverage and plaintiff's reliance upon the insurance certificate was reasonable despite caveat that the certificate did not "amend, extend or otherwise alter the terms and conditions of insurance coverage contained in the policy" as such language "could only reasonably have been interpreted by plaintiff as referring to terms <u>and conditions</u> of the coverage actually provided both [subcontractor] and [contractor] under the policy <u>and any exclusions from such actual coverage</u>, not a warning that an examination of the policy would negate the existence of *any* coverage for plaintiff, the very fact certified to by [the insurer]."  (italics in original) (underlining added).

As Plaintiffs' status as co-insured was predicated on the basic policy's coverage for liability under a contract between Ellicott Maintenance, the insured, and a party, Plaintiffs, to the contract, the agent's issuance of the certificate of insurance naming Plaintiffs as co-insureds estops Defendant from denying that the construction contract was not then in effect.  It is noteworthy that Defendant does not assert Plaintiffs' claim is based on fraud which the condition Defendant on which now relies was intended to

prevent.  Thus, under applicable New York law, as a result of the certificate of insurance issued by LRMP, Defendant is estopped from denying coverage to Plaintiffs for the state court claim based on its assertion that Plaintiffs failed to sign or execute the construction contract as a condition to such coverage.

Defendant, in support of the argument that the insurance certificate LRMP issued designating Plaintiffs as additional insureds under Ellicott Maintenance's primary and excess insurance policies does not bind Defendant to provide coverage, Defendant relies on *Taylor v. Kinsella*, 742 F.2d 709 (2d Cir. 1984), Defendant's Memorandum at 15-18, a plain reading of which establishes the case as inapposite to the instant case. At issue in *Taylor* was whether a certificate of insurance naming the lessor of an automobile as an additional insured under an insurance policy issued by the defendant that did not provide the type of insurance for claims upon which the lessor sued was sufficient to require the insurance company to provide such insurance.  *Taylor*, 742 F.2d at 710-11.  Although the certificate of insurance did name the automobile lessor as an additional insured under the subject insurance policy, because the insurance policy did not provide the type of coverage for which the automobile lessor was sued, the court held that the certificate of insurance was "simply notice to [the automobile lessor] that a policy of insurance had been issued."  *Id*. at 711.  Here, the primary policy plainly contemplates extending its coverage to Plaintiffs as additional insureds under a contract with Ellicott Maintenance.  As such, *Taylor* does not support Defendant's argument.

Summary judgment should be GRANTED based on Plaintiff's alternative argument that Defendant is bound by the insurance certificate, issued by Defendant's agent under apparent or actual authority, to provide Plaintiffs with insurance under both

the primary and excess insurance policies.

**4.      Timeliness of Notice of Claim**

Defendant maintains that because Plaintiffs did not provide a notice of potential claim under the excess insurance policy until February 7, 2008, when Plaintiffs served Defendant with the Amended Complaint, thereby notifying Defendant that insurance coverage in connection with the state court action was also sought under the excess insurance policy.  Defendant's Memorandum at 21-22.  According to Defendant, such notice was given almost three years after Plaintiffs should have become aware that DelPrince's damages were likely to exceed the primary insurance policy's coverage by April 26, 2005, when Plaintiffs were served with DelPrince's interrogatory responses made in connection with the state court action. *Id*. at 22.  According to Plaintiffs, because both the primary and excess insurance policies were issued by Defendant, the notice of potential claim provided on October 22, 2003, the timeliness of which Defendant does not dispute, was sufficient to provide notice under both policies. Plaintiff's Response at 6.  Plaintiffs alternatively argue that even if Defendant was entitled to separate notices of potential claim under each of the insurance policies at issue, Plaintiffs were not required to provide such notice with regard to the excess insurance policy until if became clear that the claim against the primary insurance policy would likely exhaust such coverage, thereby necessitating coverage from the excess insurance policy.  *Id*. at 7.

In New York, the obligation to provide notice of an occurrence accrues when the facts known to the insured would have suggested to a reasonable person the possibility

18

of a potentially covered claim. *Commercial Union Insurance Company v. International Flavors & Fragrances, Inc.*, 822 F.2d 267, 272 (2d Cir. 1987); *Utica Mutual Insurance Company v. Firemen's Fund Insurance Companies*, 748 F.2d 118, 122 (2d Cir. 1984). Compliance with notice requirements is a condition precedent to an insurer's liability under the policy, *International Flavors, supra*, at 271, and failure to comply with the notice requirement relieves an insurer of its duty to defend and indemnify, even where there has been no showing by the insurer of any prejudice caused by the delayed notice. *American Home Assurance Company v. International Insurance Company*, 684 N.E.2d 14, 17-18 (N.Y. 1997); *Unigard Security Insurance Company, Inc. v. North River Insurance Company*, 594 N.E.2d 571, 573 (N.Y. 1992); *Security Mutual Ins. Co. v. Acker-Fitzsimmons Corp.*, 293 N.E.2d 76, 78 (N.Y. 1972). Primary and excess insurance policies, however, have different notice accrual points, with notice to a primary insurance carrier required upon the happening of an occurrence or event likely to give rise to a claim, and notice to an excess insurance carrier required when the insured reasonably concludes that a covered occurrence is likely to "trigger" the excess insurance policy. *See American Home Assurance Company*, 684 N.E.2d at 17 n. 2 (noting, in context of discussing timeliness of notice to excess insurer, that "the term 'primary' insurance is used to distinguish the coverage that is immediately triggered upon a defined occurrence from 'excess' insurance, i.e., coverage which is triggered only after the former is exhausted.").

Where a duly authorized agent of both the primary and excess insurance companies received timely notice of the occurrence, stating the name of the insured, the date, time and place of the accident, and the name of the insured party, such notice has

been held to comply with the insurance policies' notice requirements, notwithstanding the fact that the agent provided notice of the accident to the primary insurer, but not the excess insurer. *D.C.G. Trucking Corp. v. Zurich Insurance Company*, 440 N.Y.S.2d 74, 75 (3d Dep't. 1981) (holding notice of an occurrence or accident to insurance agent duly authorized to receive such notice on behalf of both primary and excess insurance carriers constituted compliance with both insurance policies' terms requiring such notice despite agent's failure to notify excess insurance carrier of receipt of such notice). Moreover, "the notice requirement must be liberally construed in favor of the insured." *Id*. at 76 (citing *Wachtel v. Equitable Life Assur. Society*, 194 N.E.2d 850 (N.Y. 1935)).

In the instant case, it is not argued that LRMP is not an authorized agent of Defendant MVIC. The record establishes that the excess insurance policy provides that notice of an occurrence provided to, *inter alia*, "any agent of ours [Defendant] in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us [Defendant]". Excess Insurance Policy, Endorsement, Duties in the Event of Occurrence, Claim or Suit. Nor is it disputed that notice of the accident was also provided to LRMP by EDC on October 22, 2003. Plaintiffs' Exh. 5. [6]

The record thus establishes that LRMP's receipt of notice of the accident by EDC on October 22, 2003, the timeliness of which Defendant does not dispute, constituted notice to LRMP under both the primary insurance and excess insurance policies. As such, summary judgment as to this aspect of both motions should be GRANTED in

---

[6] Further notice of the accident was provided to LRMP by Ellicott Maintenance on October 27, 2003 (Plainitffs' Exh. 6), to Defendant MVIC by EDC's primary insurance carrier Nautilus on December 23, 2003 (Plaintiffs' Exh. 8), and to LRMP by EDC's other primary insurance carrier Selective on January 20, 2004 (Plaintiffs' Exh. 9).

favor of Plaintiffs and DENIED as to Defendant.

## **CONCLUSION**

Based on the foregoing, Defendant's motion for summary judgment (Doc. No. 14) should be DENIED; Plaintiffs' motion for summary judgment (Doc. No. 19) should be GRANTED. Defendant is required to provide Plaintiffs with a defense and indemnification in connection with the state court action under both the primary and excess insurance contracts, although coverage under the excess insurance policy should be considered excess to the primary insurance coverage Plaintiffs have through insurance policies with Selective and Nautilus. The Clerk of the Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      September 22, 2009
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Petitioner and the Respondent.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      September 22, 2009
            Buffalo, New York